UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. ARMATA, LLC,

                      Plaintiff,

          -against-

BRACHS FIVE TOWNS, LLC, and JACK B.
BRACH,

                  Defendants.

16cv2894 (GDB) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

Currently before this Court is a motion for a default judgment and attorneys' fees and costs brought by plaintiff E. Armata, LLC ("Plaintiff") against defendants Brachs Five Towns, LLC ("Brach's Supermarket") and Jack B. Brach ("Brach") (collectively, "Defendants"). (Dkt. 15 (Notice of Motion); Dkt. 21 (Order of Reference).) Plaintiff has alleged that Defendants are jointly and severally liable for violating the trust provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a *et seq.*, due to their failure to pay accrued interest on an untimely payment for wholesale quantities of produce. (*See id.*; *see also* Dkts. 16-17.) For the reasons that follow, I recommend that a default judgment be entered against Defendants, holding them jointly and severally liable to Plaintiff for $15,583.41, representing (1) $5,190.54 in accrued interest, (2) $9,771.50 in attorneys' fees, and (3) $621.37 in costs.

<u>BACKGROUND</u>

A.    **<u>Plaintiff's Complaint and Motion for Preliminary Injunction</u>**

According to the Complaint, Plaintiff is a New York produce wholesaler, and Brach's Supermarket, a New York LLC managed and controlled by Brach, was one of Plaintiff's customers. (Complaint, dated Apr. 19, 2016 ("Compl") (Dkt. 1) ¶¶ 3-5, 7.) Plaintiff alleges that,

between June 4 and 11, 2015, it sold and delivered to Defendants $33,992.30 worth of produce that had moved in interstate commerce.  (*Id.* ¶ 7.)  Defendants purportedly accepted the produce, but failed to pay for it by the dates specified on Plaintiff's invoices.  (*Id.* ¶ 8.)

Plaintiff commenced this action by filing the Complaint on April 19, 2016, through which it sought $33,992.30 in damages, pre-judgment interest, and attorneys' fees and costs. (Compl., at 6.)  In the Complaint, Plaintiff alleges six causes of action against Defendants grounded in PACA and breach of contract.  (*Id.* ¶¶ 12-36.)

In conjunction with the Complaint, and with the understanding that Brach had intended to sell Brach's Supermarket, Plaintiff also moved for a temporary restraining order and preliminary injunction so as to prevent Defendants from dissipating Brach's Supermarket's assets up to the amount of $33,992.30, except to pay Plaintiff.  (*See* Dkts. 3-6 (motions and supporting documents, dated Apr. 19, 2016).)  The Honorable George B. Daniels, U.S.D.J., promptly issued an Order to Show Cause Why Preliminary Injunction Should Not Issue Pursuant to Fed. R. Civ. P. 65.  (Dkt. 2.)  Service of Judge Daniels' Order and the Summons and Complaint was effected on Defendants on April 20, 2016.  (Dkt. 7 (Declaration of Service); *see also* Dkt. 2 (permitting service to be completed by "Federal Express or other nationally recognized overnight delivery service").)  After holding a hearing, Judge Daniels issued a Preliminary Injunction Order on April 26, 2016, requiring, *inter alia*, that "any and all funds belonging to Brach's Supermarket . . . up to $33,992.30 shall be immediately paid to [Plaintiff's attorney] for payment to Plaintiff."  (Dkt. 8.)

**B.**     **Defendants' Payment of Principal and Subsequent Proceedings**

On May 4, 2016, Plaintiff's attorney notified the Court that he had received a check in the amount of $33,992.30 from Brach's bank on May 2, 2016, "represent[ing] the principal amount

demanded in the [C]omplaint." (*See* Letter from Gregory Brown, Esq., to the Court, dated May 4, 2016 (Dkt. 10), at 1.) Plaintiff accepted this amount as "recover[y] [of] the principal due," and requested that, in light of the payment, the Court's Preliminary Injunction Order be dissolved. (*Id.*) Plaintiff's attorney nonetheless requested that the Court keep this action on its calendar because Plaintiff had not "recovered all sums owing in connection with its produce transactions" with Defendants. (*Id.*) The Court dissolved Preliminary Injunction Order on May 11, 2016. (Dkt 11.)

Around this same time frame, Plaintiff's attorney, Gregory Brown, Esq. ("Brown") claims that he began negotiations with an individual named Benjamin Kaufman ("Kaufman"), who identified himself as Defendants' attorney, for the payment of "the full amount" of Defendants' debt to Plaintiff. (Declaration of Gregory Brown, Esq., dated May 25, 2016 ("Brown Decl.") (Dkt. 16) ¶¶ 13-14.) As described in Brown's Declaration, this "full amount" included accrued interest on Defendants' untimely principal payment and attorneys' fees and costs. (*Id.* ¶ 14.) Negotiations between Brown and Kaufmann purportedly ended with Defendants declining to make any additional payments. (*Id.* ¶ 13.)

On May 17, 2016, Plaintiff requested the Clerk of Court to enter a default as to Defendants on the ground that they had failed to answer, move, or otherwise respond to the Complaint. (Dkts. 12-13.) The Clerk of Court issued the requested certificate of default shortly thereafter. (Dkt. 14.)

On May 25, 2016, Plaintiff moved for a default judgment against Defendants in the amount of $15,583.41 in accrued interest and attorneys' fees and costs. (*See* Dkt. 15 (Notice of Motion); Dkt. 16 (Brown Decl. and exhibits attached thereto); Dkt. 17 (Memorandum of Law in

Support, dated May 25, 2016 ("Pl. Mem.")).)  Plaintiff's motion for a default judgment and all

supporting papers were served on Defendants and Kaufman that same day.  (Dkts. 18-19.)[1]

    To this date, Defendants have not appeared in this action or otherwise responded to

Plaintiff's Complaint or to its motion for a default judgment.  Nor have they communicated with

this Court to request an extension of time to submit any such responses.

## DISCUSSION

## I.    APPLICABLE LEGAL STANDARDS

### A.    Default Judgment

    Rule 55(a) of the Federal Rules of Civil Procedure provides that the clerk of court shall

enter a default against a party who "has failed to plead or otherwise defend" in an action.  Fed. R.

Civ. P. 55(a).  Local Civil Rule 55.1 of this Court further provides that a party who applies for a

certificate of default by the clerk pursuant to Fed. R. Civ. P. 55(a) "shall submit an affidavit

showing (1) that the party against whom a notation of default is sought is not an infant, in the

military, or an incompetent person; (2) that the party has failed to plead or otherwise defend the

action; and (3) that the pleading to which no response has been made was properly served."

Local Civ. R. 55.1.  Once a certificate of default has been issued by the clerk pursuant to

Rule 55(a) and Local Civ. R. 55.1, then, upon application of the party seeking judgment by

---

[1] Pursuant to Local Civil Rule 55.2(c), Plaintiff notified the Court that Federal Express
was not able to deliver Plaintiff's motion for a default judgment to Brach's Supermarket because
the business had closed, as anticipated in Plaintiff's prior motion for preliminary injunction.
(Declaration Pursuant to Local Civil Rule 55.2(c), dated May 25, 2016 (Dkt. 19), ¶ 3.)  Given
that Brach's Supermarket was served with the Summons and Complaint (Dkt. 7), and that
Plaintiff mailed its motion papers to Brach's Supermarket at its last known address
(Dkts. 18-19), Brach's Supermarket's non-receipt of the motion papers "is of no moment and the
admitted inability to deliver is no bar to the entry of a default judgment."  *Moskovitz v. La Suisse*,
No. 06cv4404 (CM), 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013) (citing, *e.g.*, Fed. R.
Civ. P. 5(b)(2)(C), 55(b)(2)); *see also Allstate Ins. Co. v. Nazarov*, No. 11cv6187 (PKC) (VMS),
2015 WL 5774459, at *7 n.6 (E.D.N.Y. Sept. 30, 2015) (same).

default, the court may proceed to enter a default judgment against the defaulting party.  Fed. R. Civ. P. 55(b).

While "default is an admission of all well-pleaded allegations against the defaulting party," *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also Finkel v. Romanowicz*, 577 F.3d at 79, 84 (2d Cir. 2009) (noting that, where a defendant has defaulted, the well-pleaded allegations of the complaint are deemed to be true), a court is still "'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law,'" *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (alteration in original; quoting *Finkel*, 577 F.3d at 84); *accord Taizhou Zhongneng Import and Export Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order).  "If the complaint fails to state a cognizable claim, a plaintiff may not recover even upon defendant's default."  *Allstate Ins. Co. v. Afanasyev*, No. 12cv2423 (JBW) (CLP), 2016 WL 1156769, at *6 (E.D.N.Y. Feb. 11, 2016) (citing *Finkel*, 577 F.3d at 84), *report and recommendation adopted*, 2016 WL 1189284 (Mar. 22, 2016).

Further, although a "default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks and citation omitted), it does not reach the issue of damages, *see Ferri v. Berkowitz*, 561 F. App'x 64, 65 (2d Cir. 2014) (summary order) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). A plaintiff must therefore substantiate its claim for damages with admissible evidence to prove the extent of those damages.  *See Hounddog Prod., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 627 (S.D.N.Y. 2011) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  A plaintiff bears the burden to "introduce

sufficient evidence to establish the amount of damages with reasonable certainty." *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013). Although a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation), if a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default, *see Lenard v. Design Studio*, 889 F. Supp. 2d 518, 538 (S.D.N.Y. 2012) (adopting report and recommendation).

While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) "allows but does not require . . . a hearing").

**B.    PACA**

PACA was enacted "to regulate the interstate sale and marketing of perishable agricultural commodities." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (citing *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2d Cir. 2004)). PACA provides sellers of "agricultural produce with 'a self-help tool enabling them to protect

themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by

buyers or receivers of fruits and vegetables.'" *Id.* (citation omitted).  Under PACA, "perishable

commodities or proceeds from the sale of those commodities are held in trust by the buyer for

the benefit of the unpaid seller until full payment is made." *Id.*; *see also* 7 U.S.C. § 499e(c)(2).

This so-called "PACA trust" is created "at the moment the produce is shipped to the buyer."

*Ger-Nis Int'l, LLC v. FJB, Inc.*, No. 07cv898 (RCC), 2007 WL 656851, at *1 (S.D.N.Y. Mar. 1,

2007) (citing *In re Kornblu & Co.*, 81 F.3d 280, 286 (2d Cir. 1996)).  Moreover, the trust

remains in effect "until full payment of the sums owing in connection with [the perishable

agricultural commodities] transactions has been received by such unpaid suppliers, sellers, or

agents."  7 U.S.C. § 499e(c)(2); *Ger-Nis Int'l*, 2007 WL 656851, at *1.  This "highly unusual

trust beneficiary status" conferred to sellers of agricultural produce under PACA permits them,

"in the case of defaults, to trump the buyers' other creditors, including secured ones." *Am.*

*Banana*, 362 F.3d at 38.

      Five elements are required to establish the existence of a PACA trust:

> (1) the commodities sold were perishable agricultural
> commodities; (2) the purchaser of the perishable agricultural
> commodities was a commission merchant, dealer or broker; (3) the
> transaction occurred in interstate or foreign commerce; (4) the
> seller has not received full payment on the transaction; and (5) the
> seller preserved its trust rights by giving written notice to the
> purchaser of its intention to do so.

*Nico Mexi Food, Inc. v. Abarrotera Cent. #2 Wholesale Corp.*, No. 14cv296 (KNF), 2016 WL

873466, at *3 (S.D.N.Y. Feb. 20, 2016) (citing 7 U.S.C. § 499e); *accord A & J Produce Corp. v.*

*Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005); *see also* 7 U.S.C. § 499a (defining terms).[2]

---

[2] A "perishable agricultural commodity" includes "[f]resh fruits and fresh vegetables of
every kind and character," "whether or not frozen or packed in ice."  7 U.S.C. § 499a(4).  A
PACA "dealer" refers to any individual, partnership, corporation, or association (*i.e.*, a "person")
"engaged in the business of buying or selling in wholesale or jobbing quantities . . . any

Both individuals and corporate entities may be held liable under PACA for a failure to preserve trust assets owed to a seller of perishable agricultural commodities. *See Coosemans*, 485 F.3d at 705 ("An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." (collecting cases)); *Tomato Mgmt., Corp. v. CM Produce LLC*, No. 14cv3522 (JPO), 2014 WL 2893368, at *3 (S.D.N.Y. June 26, 2014) (holding an LLC and its agent jointly and severally liable under PACA). Further, when "'two (2) or more defendants act together to cause an injury'" under PACA, those defendants are held jointly and severally liable to the plaintiff. *See G & P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc.*, No. 15cv6174 (NG) (CLP), 2016 WL 5802747, at *5-6 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 5716819 (Sept. 30, 2016) (holding a corporation, one of its officers, and one of its principals jointly and severally liable under PACA (citations omitted)).

## II.      PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT

In its motion, Plaintiff seeks an entry of a default judgment holding Defendants jointly and severally liable to it for violating the PACA trust provisions, "in the amount of $15,583.41, constituting accrued interest through May 2, 2016 in the amount of $5,190.54 and accrued attorneys' fees [and costs] through May 24, 2016 in the amount of $10,392.87." (*See* Notice of Mot., at 1.) As set out above, Plaintiff initially brought suit against Defendants for failure to pay for wholesale quantities of produce delivered to Defendants on June 4 and 11, 2015. (*See* Compl. ¶¶ 7-8.) Defendants, however, paid $33,992.30 to Plaintiff during the pendency of this litigation, which Plaintiff concedes is sufficient to cover the principal amount due to it for that

---

perishable agricultural commodity in interstate or foreign commerce." *Id.* § 499a(6); *see also id.* § 499a(1) (defining "person").

produce.  (Brown Decl. ¶¶ 9-12.)  Accordingly, the only matter still at issue is whether the Court should enter a default judgment in Plaintiff's favor consisting of unpaid interest and attorneys' fees and costs in the amounts requested.

### A.  Liability Under PACA

Although Defendants have not appeared to defend this action, and the Clerk of Court has entered a default in favor of Plaintiff, this Court is still required to determine whether Plaintiff's allegations establish Defendants' liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

Upon a review of the Complaint, and taking Plaintiff's well-pleaded allegations as true in light of Defendants' default, *see id.*, this Court finds that Plaintiff has sufficiently pleaded the five elements required to recover PACA trust proceeds from Defendants, *see Nico Mexi Food*, 2016 WL 873446, at *3 (citing 7 U.S.C. § 499e).  First, Plaintiff has alleged that it sold and delivered to Defendants "wholesale quantities of produce which had been shipped or moved in interstate commerce," thereby meeting the first and third elements (*i.e.*, "the commodities sold were perishable agricultural commodities" and "the transaction occurred in interstate or foreign commerce").  (*Id.* ¶ 7.)[3]  Plaintiff has also alleged that both it and Brach's Supermarket were "dealers" at the time of the transactions as defined by PACA, in that Plaintiff was "engaged in the business of buying and selling wholesale quantities of produce in interstate commerce," and Brach's Supermarket was "engaged in the business of buying wholesale quantities of produce in interstate commerce," thereby meeting the second element (*i.e.*, "the purchaser of the perishable

---

[3] In addition to pleading this element, Plaintiff has now provided the Court with the invoices pertaining to its June 4 and 11, 2015 transactions with Defendants.  (*See* Brown Decl., Ex. D ("June 2015 Invoices") (Dkt. 16-1, at 15-36).)  The food items appearing on those invoices are fruits and vegetables, which, by definition, are "perishable agricultural commodities" under 7 U.S.C. § 499a(4).  (*See generally* June 2015 Invoices.)

agricultural commodities was a commission merchant, dealer or broker").  (*Id.* ¶¶ 3-4.)
Additionally, Plaintiff has alleged that Defendants "failed to pay for the [produce] goods when
payment was due, despite repeated demands," in turn, meeting the fourth element (*i.e.*, "the seller
has not received full payment on the transaction").  (*Id.* ¶ 8.)

Finally, Plaintiff has alleged that it "preserved its interest in the PACA trust."  (*Id.* ¶ 10.)
Although Plaintiff did not explicitly state in the Complaint that it preserved its interest in writing,
as required under the fifth element of a PACA trust claim, *see Nico Mexi Food*,
2016 WL 873446, at *3; *A & J Produce*, 385 F. Supp. 2d at 358; 7 U.S.C. § 499e(c)(3)-(4),
Plaintiff repeatedly referenced the invoices pertaining to its transactions with Defendants in the
Complaint (*see* Compl. ¶¶ 29-33), and has now provided those invoices to the Court with its
motion for a default judgment (*see* June 2015 Invoices).  Those invoices preserve Plaintiff's
interest in the PACA trust, in writing, through the following text:

> The perishable agricultural commodities listed on this invoice are
> sold subject to the statutory trust authorized by Section 5(c) of
> [PACA] (7 U.S.C. 499e(c)).  The seller of these commodities
> retains a trust claim over these commodities, all inventories of food
> or other products derived from these commodities, and any
> receivables or proceeds from the sale of these commodities until
> full payment is received.

(*Id.*, at 17, 31.)  Accordingly, Plaintiff's failure to state expressly in the Complaint that it
preserved its interest "in writing" is not fatal to its claim, and this Court finds that Plaintiff has
satisfied the fifth and final element required to establish liability on its PACA trust claim.

Plaintiff's allegations are also sufficient to establish Defendants' joint and several
liability.  Plaintiff has alleged that Brach "is and was a member and/or manager of Brach's
Supermarket" during the relevant time period, and that he "controlled the operations of Brach's
Supermarket, and upon information and belief was in a position of control over the PACA trust
assets belonging to Plaintiff."  (Compl. ¶ 5; *see also id.* ¶¶ 18-22 (alleging Brach "is and was a

shareholder, officer and/or director" of Brach's Supermarket).)  Taken as true, these allegations are sufficient to establish Brach's personal liability in this action.  *See Coosemans*, 485 F.3d at 705.  Further, Plaintiff's allegations, taken as a whole, are sufficient to establish that Defendants "acted together to cause an injury" to Plaintiff under PACA.  (*See, e.g.*, Compl. ¶¶ 23-27; *G & P Warehouse*, 2016 WL 5802747, at *5-6.)  This Court therefore finds that there is a sufficient basis for imposing joint and several liability in this action.  *See id.*

Accordingly, this Court recommends that Defendants be held jointly and severally liable to Plaintiff under PACA for the "full payment of the sums owing in connection with" the June 4 and 11, 2015 transactions alleged in the Complaint.  *See* 7 U.S.C. § 499e(c)(2); *G & P Warehouse*, 2016 WL 5802747, at *5-6.[4]

## B.   Damages Under PACA

As discussed above, a plaintiff seeking damages upon a defendant's default is required to substantiate its claim for damages with "sufficient evidence to establish the amount of damages with reasonable certainty."  *See RGI Brands*, 2013 WL 1668206, at *6.  As evidence of damages, Plaintiff has submitted to the Court a declaration from its attorney and a copy of the June 4 and 11, 2015 produce sales invoices that it claims to have provided to Defendants.  (*See* Brown Decl.; June 2015 Invoices.)  Having reviewed those documents, this Court concludes that a hearing on damages is not required, as this Court is able to determine Plaintiff's damages to a reasonable degree of certainty through Plaintiff's submissions alone.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary);

---

[4] Given this Court's recommendations below as to Plaintiff's requested interest and attorneys' fees, it need not reach Plaintiff's contract claim, which is based on identical conduct by Defendants, and which Plaintiff appears to assert as an alternate basis for its claimed PACA damages.  (*See* Compl. ¶¶ 28-33.)

*G & P Warehouse*, 2016 WL 5802747, at 3 (no hearing to determine damages in PACA default judgment where the plaintiff submitted an attorney declaration and invoices as evidence).

Given that Defendants have already paid Plaintiff the principal amount ($33,992.30) that they owed in connection with the June 4 and 11, 2015 produce sales, Plaintiff only seeks accrued interest as damages on its motion.  Plaintiff calculates accrued interest at a rate of 18% per annum from the dates that Defendants' payments were due under the invoices provided by Plaintiff (*i.e.*, June 25, 2015 and July 2, 2015, respectively), through the date that Defendants made their full principal payment, May 2, 2016.  (*See* Pl. Mem., at 5-6; Brown Decl. ¶ 14; *id.*, Ex. E (spreadsheet calculating interest); *see also* June 2015 Invoices, at 17 (stating June 25, 2015 payment date for June 4, 2015 invoice); *id.*, at 31 (stating July 2, 2015 payment date for June 11, 2015 invoice).)  Plaintiff's basis for its 18% per annum interest rate is the written notice regarding that rate provided on the face of the June 2015 Invoices.  (*See* Pl. Mem., at 5-6.)  That written notice states as follows:  "NOTICE:  Past due invoices shall accrue interest at 1-1/2% each month."  (*See* June 2015 Invoices, at 17, 31.)

## 1.    The Availability of Accrued Interest Under PACA

PACA creates a statutory trust that remains in effect from the time that the produce is shipped to a buyer, "until full payment of the *sums owing in connection* [therewith] has been received" by the seller.  *See* 7 U.S.C. § 499e(c)(2) (emphasis added).  Although courts have held that PACA "is not clear" as to whether accrued interest counts as among "the sums owing in connection" with a produce sale, it is now "well settled that the language of § 499e(c)(2) encompasses reasonable and contractual prejudgment interest."  *Tomato Mgmt.*, 2014 WL 2893368, at *1-2 (citing *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590, 595 (S.D.N.Y. 1995); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 351 (S.D.N.Y.

1993)); *see also id.* ("A court may award this interest in its discretion in order to fulfill

Congress's intent to protect agricultural suppliers." (citing *Rodgers v. United States*, 332 U.S.

371, 373 (1947)).  Courts have awarded interest payments under PACA in cases without explicit

agreements between the parties regarding interest payments, on the ground that sales invoices

exchanged between the parties included interest payment provisions, which became "part of the

contract between [the] two merchants" under the New York Uniform Commercial Code.  *See id.*

at *2.

> In the PACA context, courts have understood standard-form
> provisions contained in invoices to constitute additional terms of
> the purchase agreement between the parties governed by N.Y.
> U.C.C. § 2-207(2)(b). . . . The commentary to New York's
> Uniform Commercial Code is clear that, under § 2-207(2)(b), 'a
> clause providing for interest on overdue invoices [or] fixing the
> seller's standard credit terms where they are within the range of
> trade practice' does not constitute a material alteration and
> becomes part of a contract between merchants if not objected to
> within a reasonable time.  N.Y. U.C.C. § 2-207, cmt. 5.

*Id.* (awarding interest under PACA where, as here, the defendants had already paid the principal

amount due during the pendency of the litigation (citations omitted)); *see also Bounty Fresh,*

*LLC v. J N.Y. Produce, Inc.*, No. 12cv2415 (FB) (JO) 2014 WL 1010833, at *5 (E.D.N.Y.

Mar. 14, 2014) (awarding interest under PACA on the basis of an interest provision in a sales

invoice exchanged between the parties, where the defendants had defaulted and "necessarily

failed to establish the applicability of any . . . exception" to N.Y.U.C.C. § 2-207(2)); *Ne.*

*Trading, Inc. v. Ven-Co Produce, Inc.*, No. 09cv7767 (PGG), 2011 WL 4444511, at *5

(S.D.N.Y. Sept. 26, 2011) ("When the contract is between merchants, inclusion of terms in the

seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of

the contract.  It does not matter that . . . interest [was] not specifically discussed." (internal

quotation marks and citation omitted)).

The sales invoices that Plaintiff claims to have provided to Defendants with its June 2015 produce deliveries explicitly state, "Past due invoices shall accrue interest at 1-1/2% each month." (June 2015 Invoices, at 17, 31.) Further, Plaintiff's allegations suffice to bring both Plaintiff and Brach's Supermarket within the N.Y.U.C.C. definition of "merchant."[5] (*See, e.g.*, Compl. ¶¶ 3-4.) Section 2-207(2) of the N.Y.U.C.C. therefore applies, and the interest provision in the June 2015 Invoices is, effectively, "part of" the parties' produce sales agreement. *See Ne. Trading*, 2011 WL 4444511, at *5. As Defendants have defaulted, and have thus failed to establish the applicability of any exception to Section 2-207(2) of the N.Y.U.C.C. (*see, e.g.*, N.Y.U.C.C. § 2-207(2)(a)-(c)), this Court recommends that Plaintiff be awarded accrued interest in this action. *See Bounty Fresh*, 2014 WL 1010833, at *5; *see also Ne. Trading*, 2011 WL 4444511, at *1, 5 (awarding interest in a PACA action where the plaintiff, a wholesale produce dealer, provided defendant, another entity engaged in the wholesale produce business, with an invoice in connection with a produce sale, stating, "Past due invoices shall accrue interest at the annual rate of 18%"); *see also E. Armata, Inc. v. E. End Produce, Inc.*, No. 15cv44 (ADS) (ARL), 2015 WL 10457210, at *4 (E.D.N.Y. Jan. 7, 2015), *report and recommendation adopted*, 2016 WL 917935 (Mar. 9, 2016) (awarding interest to plaintiff E. Armata, Inc. against a corporate and individual defendant, where the plaintiff provided the defendants with an invoice stating, "Past due invoices shall accrue interest at 1-1/2% each month").

### 2.   The Appropriateness of Plaintiff's Proposed Interest Rate

Plaintiff seeks to collect accrued interest at a rate of 18% per annum pursuant to the notice written on its invoices to Defendants stating that interest would accrue at "1-1/2% each

---

[5] A "merchant" under the N.Y.U.C.C. is "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . . ." N.Y.U.C.C. § 2-104(1).

month" on past-due invoices.  (*See* Pl. Mem., at 5-6; June 2015 Invoices, at 17, 31; Brown Decl., Ex E.)  These two interest rates are equivalent.  *See, e.g.*, *G & P Warehouse*, 2016 WL 5802747, at *7; *Ne. Trading*, 2011 WL 4444511, at *5.  Although "the award of reasonable prejudgment interest" under PACA lies "in the discretion of the Court," *Tomato Mgmt.*, 2014 WL 2893368, at *3, courts have awarded interest in PACA actions at the rate of 1.5% per month, or 18% per annum, where, as here, there was no evidence that the defendants had ever objected to those rates, and no evidence that those rates were "outside the range of trade practice," *see G & P Warehouse*, 2016 WL 5802747, at *7 (finding an interest rate of 18% per annum in a default action to be reasonable, "[g]iven that defendants have chosen not to participate in this action and no evidence has been presented to this Court suggesting that they either object to this interest rate or that it is outside the realm of standard trade practice"); *Ne. Trading*, 2011 WL 4444511, at *5 (awarding interest computed at 1.5% per month, *i.e.*, 18% per annum, in PACA action); *see also E. Armata*, 2015 WL 1457210, at *4 (awarding interest at 1.5% per annum in a PACA action on the ground that the interest clause in the invoice exchanged between the parties "became part of [the parties'] contract" pursuant to the U.C.C., and the defendants, who defaulted, failed to carry their burden of demonstrating that an exception to the applicable U.C.C. provision applied).

This Court therefore recommends that Plaintiff be awarded interest calculated at 18% per annum as stated in the sales invoices provided to Defendants (June 2015 Invoices, at 17, 31).[6]

---

[6] This Court notes that the New York statutory interest rate for breach-of-contract claims, N.Y.C.P.L.R. §§ 5001, 5004 (9% per annum), has no bearing here, despite Plaintiff having brought a contract claim arising out of the same conduct as its PACA claim.  *See Platinum Funding*, 887 F. Supp. at 595.  As in *Platinum Funding*, had Plaintiff brought this action purely under state law, the Complaint would have been dismissed for lack of subject matter jurisdiction, given the lack of diversity among the parties (*see* Compl. ¶¶ 3-5) and the fact that the amount in controversy was less than $75,000 (*see id.* ¶ 33).  *Platinum Funding*, 887 F. Supp. at 595. Accordingly, Plaintiff's claim is grounded in a federal statute, and the state-law interest rate is not binding.  *Id.*

### 3. Plaintiff's Interest Computation

Having reviewed Plaintiff's submission on its requested interest payment (*see* Brown Decl., Ex. E), this Court finds Plaintiff's computations to be accurate, and therefore recommends that Plaintiff be awarded $5,190.54 in accrued interest.

| Invoice Date | Unpaid Balance | Payment Due Date | Date of Payment | Days Late | Interest Rate (per annum) | Interest Due |
|---|---|---|---|---|---|---|
| 6/4/15 | $22,516.30 | 6/25/15 | 5/2/16 | 312 | 18% | $3,464.43 |
| 6/11/15 | $11,476.00 | 7/2/15 | 5/2/16 | 305 | 18% | $1,726.12 |
| | | | | | **Total** | $5,190.54 |

## C. Attorneys' Fees and Costs

Plaintiff seeks $10,392.87 in attorneys' fees and costs. (Brown Decl. ¶¶ 14, 16; *id.*, Ex. F ("Attorney Invoice").) In support of its application, Plaintiff has submitted an invoice reflecting its attorneys' time records and costs, its attorneys' hourly rates ($365 and $375 per hour, for the two attorneys involved), and a brief description of the attorneys' qualifications and experience. (*Id.* ¶¶ 17-18; Attorney Invoice.) For the following reason, I recommend that Plaintiff be awarded the full amount of fees and costs requested.

### 1. Basis for Attorneys' Fees and Costs Under PACA

As with accrued interest, there is no express provision for attorneys' fees and costs under PACA. *See E. End Produce, Inc.*, 2015 WL 10457210, at *4; *Tomato Mgmt.*, 2014 WL 2893368, at *1. Nevertheless, courts award attorneys' fees and costs in PACA actions where there is a contractual basis for such an award. *See id.*, at *2 ("Plaintiff has a contractual right to reasonable attorney's fees supported by the PACA trust, and so this Court not only may but *must* award those fees." (emphasis in original) (collecting cases)). Also as with accrued interest, "standard-form provisions contained in invoices constitute additional terms of the purchase agreement between the parties," governed by the N.Y.U.C.C., and suffice to establish a

contractual basis for the payment of attorneys' fees and costs.  *Tomato Mgmt.*, 2014 WL 2893368 (citing *Dayoub Mktg., Inc. v. S.K. Produce Corp.*, No. 04cv3125 (WHP), 2005 WL 3006032, at *5-6 (S.D.N.Y. Nov. 9, 2005)); *Hop Hing Produces Inc. v. L Supermarket, Inc.*, No. 12cv1401, 2013 WL 1232919, at *4 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1232483 (Mar. 27, 2013).

In this case, the sales invoices that Plaintiff provided to Defendants in connection with the June 2015 produce transactions state:

> In the event of enforcement of our trust claim, we will seek to recover reasonable attorney's fees and the costs of recovery.
>
> NOTICE: . . . If overdue accounts are referred to an attorney, you agree to pay our reasonable attorney's fees plus the costs of all legal action as an additional charge under the contract of sale covered by this invoice.

(June 2015 Invoices, at 17, 31.)   This provision is similar to provisions that courts have held constitute a basis for attorneys' fees and costs under PACA, as "the sort of additional term incorporated under the New York U.C.C."  *See Tomato Mgmt.*, 2014 WL 2893368, at *2 (invoice provision read, "Buyer agrees to pay all costs of collection including attorney's fees"); *Hop Hing Produces*, 2013 WL 1232919, at *4 (sales invoice provision stated that the defaulting buyer agreed to pay "interest at the annual rate of 18% . . . [and] reasonable attorney's fees, plus the costs of all legal action"); *but see G & P Warehouse*, 2016 WL 5802747, at *12-13 (holding that costs were limited to cost items listed in Local Civ. R. 54.1 where the parties' sales invoice did not mention costs).  This Court therefore recommends that Plaintiff be awarded attorneys' fees and costs, as computed below.

## 2. <u>Standard for Computing Attorneys' Fees</u>

The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  As a general

matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks and citations omitted)). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours).  In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as "the straightforward nature of the work performed [and] the relative simplicity of the issues involved," *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (citations and internal quotations omitted).

### 3.   Plaintiff's Fee and Cost Application

#### a.   Reasonable Hourly Rates

Plaintiff is represented in this case by the law firm McCarron & Deiss, and specifically by Brown and his colleague, Louis W. Deiss, III, Esq. ("Deiss").  (*See* Brown Decl. ¶¶ 17-19.) Brown has submitted a declaration stating he concentrates his practice on matters related to PACA, and has been practicing since 2006.  (*Id.* ¶ 17.)  Brown's Declaration also states that Deiss concentrates his practice on PACA, and that he has been practicing since 1992.  (*Id.* ¶ 18.) Additionally, Brown asserts in his Declaration that he is "familiar with the rates charged by other attorneys of similar practice areas and tenure," and believes that his rate of $365 per hour and Deiss' rate of $375 per hour are reasonable.  (*Id.* ¶¶ 17-18.)

Considering Brown and Deiss' experience in this specialized area of law, and given this Court's knowledge of the prevailing rates in the Southern District for similar services of lawyers

of reasonably comparable skill, experience, and reputation, this Court finds that Brown and

Deiss' rates are reasonable.  In fact, courts in the Eastern District of New York have recently

found Brown's and Deiss' rates to be reasonable in similar PACA litigations.  *See G & P*

*Warehouse*, 2016 WL 5802747, at *11 ("Based on the Court's knowledge of the rates generally

charged for this type of work in connection with a PACA default, the Court finds the rate of

$365 per hour for the legal work performed by Mr. Brown to be within the reasonable range."

(collecting cases)); *E. End Produce*, 2015 WL 10457210, at *5 (finding Brown's rate of $365 per

hour and Deiss' rate of $375 per hour to be reasonable).  This Court therefore recommends no

adjustment to either Brown's or Deiss' hourly rate.  *See also Tomato Mgmt.*, 2014 WL 2893368,

at *2 (awarding an hourly rate of $450 per hour to experienced PACA practitioner); *Hop Hing*

*Produces*, 2013 WL 1232919, at *6 (awarding hourly rate of $375 per hour to experienced

PACA practitioner).

### b.  <u>Reasonable Hours</u>

This Court has reviewed Plaintiff's Attorney Invoice, which reflects attorney time records

that appear to have been maintained contemporaneously during the course of this action.  (*See*

Attorney Invoice.)  The invoice shows that "timekeeper 7," presumably Brown given the $365

per hour rate, worked 17.2 hours on this matter, but only billed 16.6 of those hours to Plaintiff.

(*See id.*)  The invoice also shows that "timekeeper 2," presumably Deiss given the $375 per hour

rate, worked and billed Plaintiff for 9.9 hours on this matter.  (*See id.*)  Given this Court's

familiarity with Plaintiff's filings in this litigation, this Court finds that both Brown and Deiss

billed for reasonable tasks and appear to have performed those tasks within a reasonable amount

of time.  In general, time-intensive tasks appear to have been delegated to Brown, who has a

slightly lower billing rate than his more experienced colleague, Deiss.  Additionally, although

Brown sometimes billed for tasks such as "eFiling" documents, which could have been performed and billed at a paralegal or administrative rate, this Court acknowledges that the McCarron & Deiss law firm has already given Plaintiff a discount of 0.6 hours on Brown's time. This Court therefore recommends no reductions to the hours billed by Plaintiff's attorneys, and recommends that Plaintiff be reimbursed for the entire 26.5 hours of time that its attorneys billed.

### c.      Lodestar Calculation

Using the reasonable rates and hours described above would result in the following lodestar calculation:

| Attorney | Hourly Rate | Hours Billed | Total |
|----------|-------------|--------------|-------|
| Gregory Brown | $365.00 | 16.6 | $6,059.00 |
| Louis W. Deiss, III | $375.00 | 9.9 | $3,712.50 |
| | | **Total** | $9,771.50 |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010), and therefore recommends that Plaintiff be awarded attorneys' fees in the amount of $9,771.50.

### d.      Costs

Plaintiff also seeks litigation costs, in the amount of $621.37, constituting a $400.00 filing fee, $170.10 in postage expenses, $27.27 in online legal research expenses,[7] and $24.00 for parking at this courthouse.  (*See* Attorney Invoice.)  In addition to its Attorney Invoice, which itemizes these costs, Plaintiff has submitted various Federal Express tracking and proof-of-delivery documents along with its declarations of service throughout this litigation.  (*See* Dkt. 7,

---

[7] Technically, online legal research expenses passed on to clients are reimbursed as part of an attorneys' fee award, not as costs.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 97 (2d Cir. 2004) ("If [plaintiff's counsel] normally bills itsy paying clients for the cost of online research services, that expense should be included in the fee award.").  Regardless, the expenses are recoverable.  *See id.*

at 2-3; Dkt. 9, at 2-3; Dkt. 16-1, at 10-11; Dkt. 19-1.)  Plaintiff has also submitted a sworn declaration from its attorney, Brown, affirming that these costs are correct and were actually incurred.  (*See generally* Brown Decl.)  Based on these submissions, this Court therefore recommends that Plaintiff be awarded costs in the full amount requested, $621.37.  *See, e.g.*, *Mister Sprout, Inc. v. Williams Farms Produces Sales, Inc.*, 881 F. Supp. 2d 482, 487 (S.D.N.Y. 2012) (upholding a report and recommendation in a PACA action recommending that the plaintiff be reimbursed for "copying, telefaxes, postage, legal research, and long distance telephone charges," and modifying the report and recommendation to permit plaintiff's recovery of attorney travel costs); *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co*., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (noting, *inter alia*, that it is reasonable for an award of costs to include reimbursement for parking costs).

## CONCLUSION

For all of the foregoing reasons, this Court recommends that a default judgment be entered against Brach's Supermarket and Brach, holding them jointly and severally liable to Plaintiff for $15,583.41, representing:

1.    Accrued interest in the amount of $5,190.54;

2.    Attorneys' fees in the amount of $9,771.50; and

3.    Costs in the amount of $621.37.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, New York 10007, Room 1310, and to the chambers of

the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007. Any requests for an extension of time for filing objections must be directed to

Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated:  New York, New York
        November 23, 2016

                                        Respectfully submitted,


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

Plaintiff counsel (via ECF)

Brachs Five Towns, LLC d/b/a Brach's Supermarket
11 Lawrence Lane
Lawrence, New York 11559

Mr. Jack B. Brach
733 Caffrey Avenue
Far Rockaway, New York 11691

Benjamin Y. Kaufman, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, New York 10016